Amor F. Pierce and Ida Mae Pierce v. Commissioner.
Pierce v. Commissioner
Docket Nos. 990-64, 3103-64.
United States Tax Court
T.C. Memo 1969-1; 1969 Tax Ct. Memo LEXIS 294; 28 T.C.M. (CCH) 1; T.C.M. (RIA) 69001; January 6, 1969, filed Thaddeus Rojek and William Lee McLane, 2101 Connecticut Ave., N. W. , Washington, D.C., for the petitioners. Edward H. Boyle, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Docket
Year
Deficiency
Number
990-64
1955
$17,582.21
1956
16,025.67
1957
14,495.19
1958
27,676.97
1959
23,732.00
3103-64
1960
$16,322.00
1961
32,758.00
*295 An additional deficiency in the sum of $3,468.96 for the year 1957 was claimed by respondent in his answer. These cases were consolidated for trial and opinion. Petitioners have conceded some of the adjustments that were made. The sole issue is whether certain amounts paid in the taxable years 1955 through 1961 are deductible as interest. Findings of Fact All of the facts have been stipulated and they are so found. In addition, the record in Amor F. Pierce and Ida Mae Pierce v. Commissioner, docket No. 70676, is incorporated herein by stipulation of the parties. Amor F. Pierce (hereinafter referred to as petitioner) and Ida Mae Pierce are husband and wife with their legal residence at the time they filed the petitions in these proceedings at Van Nuys, California. Their joint Federal income tax returns for the years 1955, 1956, 1957, 1958, 1959, 1960 and 1961, prepared on the cash basis, were filed with the district director of internal revenue, Los Angeles, Calif. An amended return for the year 1956 was also filed by them. These consolidated cases involve nine "Retirement Life Annuities, With Ten Years Payment Certain" purchased from All Service Life Insurance Corporation, *296 Phoenix, Arizona (hereinafter referred to as All Service). The first six annuity contracts were acquired in December 1954 and numbered A356 through A361. The next two contracts, numbered A411 and A412, were acquired in December 1955 and the last contract, numbered A499, was acquired in December 1957. The events which have occurred, in form, with respect to these nine annuity contracts before and during the years in question are set forth in the paragraphs that follow: 1954 The tax year of 1954 is not involved in these proceedings but a recital of the events in that year is necessary to give a 2 complete picture of the transactions involved. On December 13, 1954, petitioner applied to All Service for the issuance of six deferred annuity contracts. The consideration for each contract was $100,000, payable in six annual installments of $16,666.67, or a total for the six contracts of $100,000 per annual installment. That same day All Service accepted petitioner's application and his nonrecourse 6 percent demand promissory note in the face amount of $100,000 as payment of the first annual consideration and issued to him six annuity contracts, dated December 1, 1954. Petitioner's *297 daughter, 10 years of age at the time, was designated as the annuitant in three of the contracts and his son, 1 year of age at the time, was designated as the annuitant in the other three contracts. Payments under each contract are to begin on the contract anniversary date at which the named annuitant's age at nearest birthday is 65 years. Petitioner is the contract owner and death benefit beneficiary in each contract. On December 13, 1954, All Service agreed to loan petitioner a total of $117,441 pursuant to six contract loan agreements. As sole security for the loans, the petitioner assigned the six annuity contracts to All Service. He was able to borrow $117,441 on the annuity contracts because the contracts provided that the net loan value shall be computed "as of the end of any period through which interest on such loan and all prior loans have been paid in advance." Since he agreed to pay interest on the loans for 6 years in advance, the net loan value was computed as of the end of the 6th year. On December 28, 1954, All Service delivered to Farmers and Stockmens Bank in Phoenix, Arizona, its check in the amount of $17,441 for credit to petitioner's account. The balance of *298 the loan was applied by All Service against, and in discharge of, the $100,000 demand note which petitioner had delivered in payment of the first annual consideration. That same day petitioner paid to All Service the sum of $24,718 as interest on the loan of $117,441 for 6 years in advance at the rate of 3.75 percent per annum, with interest paid for more than 1 year in advance discounted at the rate of 2.75 percent per annum compounded annually. The sum of $24,718 was the amount claimed as an interest deduction in 1954 and disallowed by respondent. This deduction was the subject of the litigation in the Pierce case, docket No. 70676, where the Court found for respondent. 1955 On December 17, 1955, petitioner applied to All Service for the issuance of two additional deferred annuity contracts. The consideration for each contract was $23,000 payable each year for six years, or a total for the two contracts of $46,000 per annual installment. That same day All Service accepted petitioner's application and his two nonrecourse 3.75 percent demand promissory notes, each in the face amount of $23,000 as payment of the first annual consideration on these two additional annuity contracts *299 and issued to him two deferred annuity contracts, dated December 1, 1955. Petitioner's daughter was designated the annuitant in one contract and his son in the other. Petitioner is the contract owner and death benefit beneficiary in each contract. As payment of the second annual consideration of $100,000 on the first six contracts All Service accepted from petitioner on December 17, 1955 six nonrecourse 3.75 percent demand promissory notes each in the face amount of $16,666.67. On December 17, 1955, All Service agreed to loan petitioner a total of $146,000.02 pursuant to eight contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Service applied the entire proceeds of the loans to the payment of petitioner's promissory notes made in 1955. On December 21, 1955, petitioner paid to All Service the sum of $35,307.20. Of this amount $3,845.40 constituted the payment of interest for one additional year in advance on the existing indebtedness of $117,441. The balance of $31,461.80 constituted the payment of interest in advance on the new loans. On December 23, 1955, the Farmers and Stockmens Bank *300 agreed to loan petitioner a total of $29,434.86 pursuant to eight contract loan agreements of which each called for the payment of interest in advance. The loans were secured by the annuity contracts. The proceeds of the loans were deposited in petitioner's account at the bank. On December 27, 1955, petitioner paid to the Farmers and Stockmens Bank the sum of $6,346.72 as interest in advance on the 3 loans made by the bank to petitioner. That same day the loans were assigned, together with the balance of the prepaid interest, by the bank to All Service. On their joint Federal income tax return for the year 1955, petitioners claimed an interest deduction in the amount of $41,653.92 for interest paid to All Service and Farmers and Stockmens Bank. Respondent has disallowed the deduction. 1956 As payment of the third annual consideration of $100,000 on the first six contracts and the second annual consideration on the two additional contracts, All Service accepted from petitioner on December 12, 1956 eight nonrecourse 3.75 percent demand promissory notes of which six were each in the face amount of $16,666.67 and the other two were each in the face amount of $23,000. That *301 same day All Service agreed to loan petitioner a total of $146,000.02 pursuant to eight contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Service applied the entire proceeds of the loans to the payment of petitioner's promissory notes made in 1956. On December 21, 1956, petitioner paid to All Service the sum of $33,874.41. Of this amount $4,782.71 constituted the payment of interest for one additional year in advance on the existing indebtedness of $146,066.53. The balance of $29,091.70 constituted the payment of interest in advance on the new loans. On December 12, 1956, the Farmers and Stockmens Bank agreed to loan petitioner a total of $27,909.98 pursuant to eight contract loan agreements of which each called for the payment of interest in advance. The loans were secured by the annuity contracts. The proceeds of the loans were deposited in petitioner's account at the bank. On December 21, 1956, petitioner paid to Farmers and Stockmens Bank the sum of $5,640.17 as interest in advance on the loans. Thereafter, the loans were assigned, together with the balance of the prepaid interest, *302 by the bank to All Service. On their joint Federal income tax return for the year 1956, petitioners claimed interest deductions in the amounts of $33,874.41 and $5,640.17 for interest paid to All Service and Farmers and Stockmens Bank, respectively. Respondent has disallowed the deduction. 1957 On December 8, 1957, petitioner applied to All Service for the issuance of one more deferred annuity contract. The consideration for the contract was $24,000 payable each year for six years. That same day All Service accepted petitioner's application and his check in the amount of $200 and nonrecourse 3.75 percent demand promissory note in the face amount of $23,800 as payment of the first annual consideration and issued to him one deferred annuity contract dated December 1, 1957. Petitioner's son was designated therein as the annuitant and petitioner as the contract owner and death benefit beneficiary. On December 12, 1957, All Service agreed to loan petitioner a total of $169,800.02 pursuant to nine contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Service applied $100,000.02 of the proceeds *303 of the loans to the payment of the fourth annual consideration due on the first six annuities; $46,000 of the proceeds to the payment of the third annual consideration due on the two additional annuities; and the remaining $23,800 to the payment of the promissory note made in that amount in 1957. That same day petitioner paid to All Service the sum of $39,432.06. Of this amount $7,721.38 constituted the payment of interest for one additional year in advance on the existing indebtedness of $230,970.35. The balance of $31,710.68 constituted the payment of interest in advance on the new loans. On December 8, 1957, Selective Investment Company, Phoenix, Arizona, agreed to loan petitioner a total of $32,336.98 pursuant to nine contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. On December 12, 1957, petitioner paid to Selective Investment Company the sum of $6,071.49 as interest in advance on the loans made by the company to petitioner. That same day the loans were assigned, together with the balance of prepaid interest, by the company to All Service. On the joint Federal income tax return for the *304 year 1957 petitioners claimed interest deductions in the amounts of $39,432.06 and $6,061.49 for interest paid to All Service and Selective Investment Company, respectively. Respondent has disallowed the deduction in the amount of $39,432.06 for interest paid to All Service. Respondent, by 4 amendment to answer, also challenges the deduction taken in the amount of $6,061.49. Respondent claims an increased deficiency for 1957 in the sum of $3,468.96 on the ground that the said $6,061.49 does not constitute interest. 1958 On December 3, 1958, All Service agreed to loan petitioner a total of $211,163.02 pursuant to nine contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Service applied $100,000.02 of the proceeds of the loans to the payment of the fifth annual consideration due on the first six annuities; $46,000 of the proceeds to the payment of the fourth annual consideration due on the two annuities purchased in 1955; and $24,000 to the payment of the second annual consideration due on the annuity purchased in 1957. The balance of the loan proceeds, or $41,163, was remitted to the petitioner. *305 That same day petitioner paid to All Service the sum of $58,155.71. Of this amount $19,677.71 constituted the payment of interest for one additional year in advance on the existing indebtedness of $585,639.53. The balance of $38,478 constituted the payment of interest in advance on the new loans. On the joint Federal income tax return for the year 1958, petitioners claimed interest deductions in the amount of $58,155.71 for interest paid to All Service. Respondent has disallowed the deduction. 1959 On December 7, 1959, All Service agreed to loan petitioner a total of $209,507.02 pursuant to nine contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Service applied $100,000.02 of the proceeds of the loans to the payment of the sixth annual consideration due on the first six contracts; $46,000 of the proceeds to the payment of the fifth annual consideration due on the two additional annuities; $24,000 of the proceeds to the payment of the third annual consideration due on the annuity purchased in 1957. The balance of $39,507 was remitted to petitioner. That same day petitioner paid to All *306 Service the sum of $55,827.77. Of this amount $20,313.96 constituted the payment of interest for one additional year in advance on the existing indebtedness of $603,796.02. The balance of $35,513.81 constituted the payment of interest in advance on the new loans. On their joint Federal income tax returns for 1959, petitioners claimed an interest deduction in the amount of $55,828 for interest paid to All Service. Respondent has disallowed the deduction. 1960 On December 23, 1960, All Service agreed to loan petitioner a total of $70,000 pursuant to three contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Servce applied $46,000 of the proceeds of the loans to the payment of the sixth annual consideration due on the two annuity contracts purchased in 1955 and the remaining $24,000 of the proceeds of the loans to the payment of the fourth annual consideration due on the last annuity contract purchased in 1957. That same day petitioner paid to All Service the sum of $30,999.62. Of this amount $23,070.24 constituted the payment of interest for one additional year in advance on the existing *307 indebtedness of $734,702.04. The balance of $7,929.38 constituted the payment of interest in advance on the new loans. On December 23, 1960, Selective Investment Company agreed to loan petitioner a total of $26,702 pursuant to nine contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. That same day petitioner paid to Selective Investment Company the sum of $4,102.56 as interest in advance on loans made by the company to petitioner. These loans were assigned, together with the balance of the prepaid interest, by the company to All Service. On their joint Federal income tax return for the year 1960, petitioners claimed an interest deduction in the amount of $39,400 [1] for interest paid to All Service. Respondent disallowed the deduction. 1961 In the early part of 1961, All Service received from petitioner 3 checks made 5 payable to it in the total amount *308 of $190,620.07. In accordance with petitioner's instructions, All Service applied these remittances to the partial repayment of the existing indebtedness secured by the first six annuity contracts in the amount of $754,904.04. This, together with the previously prepaid interest that became refundable in the amount of $43,722, which was also applied against the same indebtedness, reduced the indebtedness to $520,561.97. On December 20, 1961, All Service agreed to loan petitioner a total of $68,114.88 pursuant to seven contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. All Service, in accordance with petitioner's instructions, applied $44,114.88 of the proceeds of the loans to the reduction of the indebtedness secured by the two annuity contracts purchased in 1955. As a result, $4,920.40 of the previously prepaid interest became refundable and it, too, was applied against the same indebtedness. The balance of the proceeds, $24,000, was applied to the payment of the fifth annual consideration due on the last annuity contract purchased in 1957. That same day petitioner paid to All Service the sum *309 of $37,533.57. Of this amount $24,828.15 constituted payment of interest for one additional year in advance on the existing indebtedness of $376,258.78. The balance, $12,705.42, constituted the payment of interest in advance on the new loans. On December 20, 1961, Selective Investment Company agreed to loan petitioner a total of $21,600 pursuant to six contract loan agreements of which each called for the payment of interest in advance. These loans were secured by the annuity contracts. That same day petitioner paid to Selective Investment Company the sum of $3,012.15 as interest in advance on the loans made by the company to petitioner. These loans were assigned, together with the balance of the prepaid interest, by the company to All Service. On their joint Federal income tax return for 1961, petitioners claimed an interest deduction in the amount of $68,115 [2] for interest paid on annuity loans. Respondent has disallowed the deduction. *310 The following stipulated schedule, identified as Exhibit 669-QQQ in the record, shows the actual annuity and loan transactions actions during all of the years involved with respect to the nine annuity contracts: AMOR F. PIERCE M.D.
Nine Retirement Annuity Contracts Nos. A356 thru A361, A411, A412, and
A499
Actual Annuity and Loan Transaction
Month
of
Trans-
Cash
Prepaid
Total
action
Value
Interest
Loans
12-54
A356-361
$ 102,647
$ 20,314
$ 117,441
12-55
A356-361,411 & 412
252,513
55,389
292,876
12-56
A356-361,411,412
406,499
84,096
466,786
12-57
A356-361,411,412 & 499
589,354
111,444
668,923
12-58
A356-361,411,412 & 499
777,239
145,045
880,086
12-59
A356-361,411,412 & 499
970,290
169,446
1,089,593
12-60
A356-361,411,412 & 499
1,066,004
173,674
1,186,295
12-61
A356-361,411,412 & 499
1,119.954
131,490
1,016,633
AMOR F. PIERCE M.D.
Nine Retirement Annuity Contracts Nos. A356 thru A361, A411, A412, and
A499
Actual Annuity and Loan Transaction
Yearly
Increase
Net Cost
or
Month
In
(Earnings)
of
Net
Net
Loan In-
Trans-
Cash
Cash
terest
Annu-
Accumu-
action
Value
Value
Payable
ally
lative
12-54
$ 5,520
$5,520
$24,718
$1,757
$ 1,757
12-55
15,026
9,506
41,654
2,713
4,470
12-56
23,809
8,783
39,515
2,822
7,292
12-57
31,875
8,066
45,503
5,300
12,592
12-58
42,198
10,323
58,156
6,670
19,262
12-59
50,143
7,945
55,828
8,376
27,638
12-60
53,383
3,240
35,102
5,160
32,798
12-61
234,811
181,428
40,546
4,138
36,936
*311 Petitioner's purported purchases of the annuities during the years 1955 through 1961, borrowing funds from All Service and payment and prepayment of interest on such loans lacked substance and constituted sham transactions that were entered into for the sole purpose of securing claimed tax deductions. Opinion Beginning in 1954 and extending through 1961 petitioner participated in a series of transactions with All Service involving multiple-premium annuity contracts. Petitioner entered these transactions pursuant to a plan of purchase which contemplated the borrowing of part or all of the cash value 6 of the annuities each year and using such borrowed funds to prepay interest on the loans and pay the annuity premiums as they became due. The object of the transactions was to secure an interest deduction each year under the provisions of section 163(a), I.R.C. of 1954[3] allowing "as a deduction all interest paid * * * on indebtedness." The operation of the plan will, if the transactions be clothed with the mantle of substance, always result in a substantial deductible interest payment which would be obtained by a relatively small out-of-pocket payment. *312 The first six annuity contracts purchased in 1954 were numbered A356 through A361. They were acquired by petitioners pursuant to the plan with simultaneous borrowing of all of the cash value and using the proceeds to pay the first year premiums and prepay most of the loan interest. The deduction of this purported interest payment in 1954 was the subject of the litigation in Amor F. Pierce and Ida Mae Pierce v. Commissioner, docket No. 70676. The record in that case is included in the stipulation of facts in the instant case. This litigation resulted in our opinion and decision in Amor F. Pierce, 37 T.C. 1039 (1962), which was affirmed per curiam 311 F. 2d 894 (C.A. 9, 1962), and certiorari denied 373 U.S. 912 (1963). In this case we held the purported interest payments were not deductible since the transactions with All Service were lacking in substance. We held Knetsch v. United States, 364 U.S. 361 (1960), was controlling and we found "that during the taxable year 1954 there was the same lack of substance in petitioner's *313 purported annuity purchases, loans, and interest payments as was found in Knetsch." Our decision in petitioner's earlier case covering the year 1954 is controlling in the present cases covering the years 1955 through 1961. The same six annuity contracts (A356 through A361) that were involved in the earlier case are involved here plus two more purchased in 1955 (A411 and A412) and one more (A499) purchased in 1957. The same pattern of purchasing, borrowing, and prepaying interest, which we held lacking in substance in 1954, was followed in all of the subsequent transactions here involved in the years 1955 through 1961. Petitioner makes no extended argument that the transactions here involved do contain "economic substance." His argument on brief is that the language and legislative history of section 264(a)(3) disallowing certain deduction for interest paid on indebtedness incurred or continued to purchase or carry insurance contracts, "shows that Congress intended to allow the interest deductions involved herein * * * there is no need for the Court to submit their annuity transactions to a Knetsch- type 'ecomomic substance' analysis." The only reference to any claim that the *314 transactions here involved contained "economic substance" is found in the following closing lines of his 40-page brief: Petitioners also submit, however, that, if so analyzed, petitioner's annuity transactions do contain "economic substance" within the meaning of the Knetsch test. The undisputed facts herein show that bona fide indebtedness had, in fact, been created; that such indebtedness had, in fact, been repaid in part in February and March of 1961 with more than 190,000 real dollars; and that, in fact, petitioner had a sizeable equity in his annuities. The detailed mathematics and mechanics of the transactions have been set forth at length in the stipulated facts in our findings herein. These findings, including the schedule identified as Exhibit 69-QQQ, show conclusively the basic similarity of the transactions involved here and the transactions involved in petitioner's prior case that resulted in our decision in Amor F. Pierce, supra, and also the transactions involved in Knetsch v. United States, supra.We hold here as we held in Amor F. Pierce that the transactions involved lacked substance in that nothing was intended to be realized from the *315 transactions beyond the tax deductions. Section 163(a) does not permit a deduction for interest paid or accrued which cannot be said to have a purpose apart from anticipated tax consequences. Goldstein v. Commissioner, 364 F. 2d 734 (C.A. 2, 1966), affirming 44 T.C. 248. This earlier Pierce case also decides any argument that the 1961 purported partial repayments of some of the so-called loans, that had been made in earlier years, put some substance into the loan transactions. As we said in the Pierce case, such payments cannot impart retroactive vitality to 7 a debt transaction that we hold was a sham when made. See also William R. Lovett, 37 T.C. 317. This is especially true when it appears this so-called "repayment" is little more than a deposit that petitioner was assured he could withdraw at any time. As indicated, petitioners' main argument is based on the language and legislative history of section 264(a)(3). This section generally disallows *316 a deduction for amounts paid on indebtedness incurred to purchase or carry a multiple-premium annuity contract, pursuant to a plan of purchase, which contemplates the systematic borrowing of part or all of the increases in the cash value of such contract. This section was expressly made applicable only to post-August 6, 1963 transactions. He maintains that the legislative history of section 264(a)(3) shows that Congress intended to allow a deduction for interest paid in connection with the purchase of multiple-premium annuities during the years involved herein. The same argument was advanced in W. Lee McLane, Jr., 46 T.C. 140 (1966), affd. 377 F. 2d 557 (C.A. 9, 1967). certiorari denied 389 U. S. 1038 (1968). [4] In McLane, the taxpayers were engaged in a series of similar transactions with the same All Service Life Insurance Corporation and they, too, relied upon the language and history of section 264(a)(3) in their argument to the Court. In response to this argument this Court reviewed the history of section 264 and stated: Based upon the foregoing, petitioner by a tour de force concludes that: (a) The 1958 transaction herein is the *317 type of abuse meant to be curbed by subsection (a)(3), but only prospectively; (b) the legislative history expressly confirms his assertion that the deduction flowing from this abuse was allowable under prior law; and (c) the "interest" involved herein is therefore deductible. We agree with petitioners that the 1958 transaction in form fell within the class of transactions at which subsection (a)(3) was aimed. But we do not agree with his assertion that the legislative history should be turned into an open-ended license applicable without regard to the substance of the transaction. Nor do we agree with the assertion that, if Knetsch and Pierce, were controlling with respect to post-1958 multiple-premium annuities, there would have been no need for further legislation in 1964. Knetsch and Pierce involved transactions without substance. Congress, in enacting section 264 (a)(3), struck at transactions with substance. It is a reductio ad absurdum to reason, as petitioner does, that Congress *318 simultaneously struck down a warm body and breathed life into petitioner's cadaver. The only argument presented by petitioner on this phase of his case is the same argument that was rejected in McLane and his added contention in his reply brief that McLane was wrongly decided. We reaffirm our position in McLane and hold there is no merit in petitioner's argument based on the legislative history of section 264(a)(3). We hold, therefore, that petitioner may not deduct the claimed "interest" payments paid during the years in question. For the same reasons these deductions must fall we also hold that the $6,061.49 deducted in 1957 as an interest deduction, which was claimed in the return, overlooked in the statutory notice and raised as an issue in the amendment to answer, may not be deducted by petitioner. Decision will be entered under Rule 50. Footnotes
1. The Court is unable to determine the composition of this deduction since the record only shows that in 1960 $30,999.62 was paid as interest to All Service and that $4,102.56 was paid as interest to Selective Investment Company.↩
2. The Court is unable here, as well as in 1960. to determine the composition of the deduction since the record only shows that in 1961 $37,533.57 was paid as interest to All Service and that $3,012.15 was paid as interest to Selective Investment Company.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
4. W. Lee McLane, appears as counsel for petitioners in this and in the earlier Pierce case and he also represented the taxpayer in Knetsch v. United States, 364 U.S. 361↩ (1960).